Westbrook v Westbrook (2023 NY Slip Op 00255)

Westbrook v Westbrook

2023 NY Slip Op 00255

Decided on January 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

534262
[*1]Sean Westbrook, Plaintiff,
v
Samantha Westbrook, Appellant.

Calendar Date:December 14, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and McShan, JJ.

Whiteman Osterman & Hanna LLP, Albany (Anna V. Pinchuk of counsel), for appellant.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Paul Pelagalli, J.), entered August 30, 2021 in Saratoga County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in April 2010 and have three minor children. In August 2020, the husband commenced this action for divorce, asserting as the grounds for divorce that the parties' relationship had been irretrievably broken for at least six months. The wife thereafter filed her answer and counterclaims, alleging separate grounds for divorce. At trial, both parties proceeded in a self-represented capacity. At the start of the trial, Supreme Court found that the marriage was irretrievably broken for at least six months prior to the commencement of the action and the trial proceeded on the issue of equitable distribution. The wife thereafter sought to admit 502 pages of evidence that had not been submitted as individual exhibits and where no foundation had been laid. Supreme Court scheduled a second trial date for the purpose of addressing this evidence. The day before this second trial date, the wife's newly retained counsel requested an adjournment, which was denied. The wife declined to proceed without counsel, at which time the court closed the proof and allowed the wife to move to reopen testimony within 30 days after having time to consult counsel; however, the wife did not so move.
Thereafter, Supreme Court issued findings of facts and conclusions of law. As relevant here, the court ordered the husband to pay maintenance to the wife in the amount of $150 per week for three years and six months. As to the marital residence, Supreme Court ordered that the husband continue to pay the mortgage until 30 days after the judgment of divorce, at which time either party could buy out the other's interest for $7,500 or the house was to be sold. The court did not distribute the husband's 401(k) account due to a lack of proof regarding the account's accrual. Additionally, the husband was to retain and be responsible for a Dodge Ram 1500, and the wife would retain possession and be responsible for maintaining a Jeep Grand Cherokee. Supreme Court ordered that each party also be responsible for all debts solely in his or her name. Lastly, the court determined that neither party was entitled to an award of counsel fees. A judgment of divorce was thereafter entered. The wife appeals.[FN1]
Prior to reaching the merits, we address the wife's allegation that Supreme Court erred in not adjourning the second trial date to give the wife the opportunity to confer with her retained counsel. "The determination as to whether to grant an adjournment is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent a clear abuse of that discretion" (Matter of Braswell v Braswell, 80 AD3d 827, 829 [3d Dept 2011] [citations omitted]). Here, [*2]when the parties appeared for the second day of trial, the court stated that it had received a letter, only the day prior, from an attorney requesting an adjournment on the wife's behalf.[FN2] Notably, over two months had elapsed since the first day of trial and, at this point, the husband had already closed his proof and the wife's testimony was mostly complete. Supreme Court acknowledged that adjourning at this point would prejudice the husband, especially given that the next date available for trial would not be for many weeks. The principal court attorney for the court also stated that the parties were urged to get counsel at every conference during the proceedings. Moreover, the court informed the wife that it was giving her attorney 30 days to file a motion to reopen the proof. Such motion was never filed. Given these facts, we find that Supreme Court did not abuse its discretion in denying the wife's request to adjourn to consult newly retained counsel (see Dench-Layton v Dench-Layton, 151 AD3d 1199, 1200 [3d Dept 2017]; Matter of Braswell v Braswell, 80 AD3d at 829).
Nor do we agree with the wife that she was deprived of a fair trial because Supreme Court did not allow her to admit her 502 pages of evidence. "The trial court has broad authority to control the courtroom, rule on the admission of evidence, elicit and clarify testimony, expedite the proceedings and to admonish counsel and witnesses when necessary" (Grimaldi v Sangi, 177 AD3d 1208, 1212 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 37 NY3d 907 [2021]; see Matter of Andreija N. [Michael N.—Tiffany O.], 206 AD3d 1081, 1084 [3d Dept 2022]). Here, on the first day of trial, when asked if she had submitted any exhibits, the wife informed the court that she had sent a large file containing pictures and videos. The court clarified that it could not just accept her proffer and that each piece of evidence would need to be broken down into exhibits and that a foundation would need to be laid for each one. The court then stated that, given the volume of the evidence submitted, it would need to come back another day to address the documents. When the parties arrived for the second trial date, after the court denied the wife's aforementioned adjournment request, the wife refused to continue testifying, stating that she was not prepared to move forward without an attorney present. The court decided that the best course of action was to close proof and give the wife's attorney an opportunity to move to reopen the proof, but no such motion was filed.
Significantly, the wife mischaracterizes the action of Supreme Court as a failure to admit the evidence when the court was prepared to address the exhibits at the second trial date. However, it was the wife's desire not to continue without an attorney that precluded the court from accepting these documents into evidence. That the wife chose not to avail herself of the opportunity to have the proof reopened does not constitute [*3]an abuse of discretion. As such, Supreme Court did not deprive the wife of her right to a fair trial, especially given that "[c]ourts are obligated to keep the respective parties focused upon a succinct presentation of evidence relevant to the issues to be decided and to insure an orderly and expeditious trial" (London v London, 21 AD3d 602, 602 [3d Dept 2005] [internal quotation marks, brackets, ellipsis and citation omitted]; see Matter of Yeager v Yeager, 110 AD3d 1207, 1211 [3d Dept 2013]).
We turn now to the wife's contention that Supreme Court erred in failing to consider the extent, duration and impact of abuse by the husband when rendering the award of maintenance. "In any matrimonial action, the court, upon application by a party, shall make its award for post-divorce maintenance pursuant to the guidelines set forth in [Domestic Relations Law § 236 (B) (6)]. The court shall order the post-divorce maintenance obligation up to the income cap in accordance with the statutory formula, unless the court finds that the post-divorce maintenance guideline obligation is unjust or inappropriate, which finding shall be based upon consideration of any one or more of the specifically enumerated factors set forth in the statute" (Harris v Schreibman, 200 AD3d 1117, 1120 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; accord King v King, 202 AD3d 1383, 1384 [3d Dept 2022]). "The amount and duration of a maintenance award, if any, are a matter within the sound discretion of Supreme Court, and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Hughes v Hughes, 198 AD3d 1170, 1173 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; see King v King, 202 AD3d at 1384). "Although the court need not articulate every factor it considers, it must provide a reasoned analysis of the factors it ultimately relies upon in determining maintenance" (King v King, 202 AD3d at 1384 [internal quotation marks, brackets, ellipsis and citations omitted]; see Domestic Relations Law § 236 [B] [6] [e] [1]). Here, the court articulated each factor it considered, including the wife's testimony regarding domestic violence by the husband and that, because he removed the wife's access to their bank accounts, she was unable to pay for childcare or a vehicle.[FN3] Although the wife made references to domestic violence throughout the trial, her testimony detailed only one incident in particular.[FN4] Also, while the husband's actions may have impeded the wife's ability to secure employment, we cannot say that Supreme Court's decision not to deviate from the guidelines obligation constitutes an abuse of discretion (see Harris v Schreibman, 200 AD3d at 1121).
Now, we turn to the wife's challenges to Supreme Court's equitable distribution of certain marital assets. The court "has substantial discretion to fashion such awards based on the circumstances of each [*4]case, and the determination will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (Williams v Williams, 99 AD3d 1094, 1096 [3d Dept 2012]; see Domestic Relations Law § 236 [B] [5] [d]). We do not find that the court erred in directing that the marital residence be listed for sale within 30 days of the divorce judgment. Notably, the wife agreed to the sale of the marital residence as long as she had time to find new housing, and the court directed that the husband continue paying the mortgage and all utilities during that time. As to the wife's contention that the court erred in ordering her to pay all of the expenses for the Jeep, testimony established that the husband has two vehicles registered in his name, a Dodge Ram and the Jeep. The court ordered that the husband shall retain possession of the Dodge Ram and be responsible for all costs associated with such vehicle. It also directed that the wife retain possession of the Jeep and be responsible for all costs associated with it, once the husband conveys title to her. Although the wife argues that she is unable to afford these fees, she has been awarded maintenance, child support and exclusive possession of the marital residence until 30 days after the divorce judgment, with the husband to pay all utilities. As such, the court considered the wife's financial difficulties and gave her some time to get on her feet. Despite the wife's contentions to the contrary,[FN5] "it is clear from the record that Supreme Court took into account all of the necessary factors and, as such, we defer to the court's findings of fact and credibility and affirm this distributive award" (Allen v Allen, 179 AD3d 1318, 1320 [3d Dept 2020]; see Arthur v Arthur, 148 AD3d 1254, 1255 [3d Dept 2017]).
We do, however, find that Supreme Court erred by declining to distribute any portion of the husband's 401(k) account to the wife. The parties do not dispute that the amount in the husband's 401(k) account was approximately $1,000 and that those funds accumulated during the marriage and were thus marital property subject to equitable distribution (see Domestic Relations Law § 236 [B] [5] [c]; Majauskas v Majauskas, 61 NY2d 481, 485-486 [1984]; Dougherty v Dougherty, 256 AD2d 714, 715 [3d Dept 1998]). Although the valuation of the husband's 401(k) account is not entirely clear, we do find that the wife is entitled to her equitable share. Accordingly, we direct the husband, within 60 days of the date of this decision, to obtain a letter from his employer setting forth the value of his 401(k) account as of August 28, 2020 — which is the date the husband commenced this action. The husband is then directed, within 90 days of the date of receipt of this letter, to pay to the wife 50% of the amount set forth by the employer pursuant to the Majauskas formula (see e.g. Majauskas v Majauskas, 61 NY2d at 486; Damiano v Damiano, 94 AD2d 132, 139 [2d Dept 1983]).
Finally, as to counsel fees[*5],[FN6] the wife did not "properly support[] her claim by filing a copy of the retainer agreement and a detailed affidavit setting forth the charges incurred" (Curley v Curley, 125 AD3d 1227, 1231 [3d Dept 2015]; see Domestic Relations Law § 237 [a]). Accordingly, Supreme Court did not err in declining to order the husband, despite being the monied spouse, to pay the wife's counsel fees. We have examined the wife's remaining contentions and find them to be without merit.
Egan Jr., J.P., Clark, Fisher and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as failed to make any distribution regarding plaintiff's 401(k) account; defendant is awarded 50% of the value of plaintiff's 401(k) account as of the date of commencement of this action, to be paid in a manner not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: To the extent that the wife's notice of appeal states that she is appealing the "decision and order" instead of the judgment of divorce, this Court may overlook such inaccurate description (see CPLR 5520 [c]). In this respect, attached to the notice of appeal is the judgment of divorce, and the CPLR 5531 statement clearly indicates she is appealing the judgment of divorce. Moreover, the findings of fact and the judgment of divorce were entered the same day.

Footnote 2: It appears from the record on appeal that a notice of appearance was not filed by the wife's attorney until two months after the second trial date.

Footnote 3: We also note that Supreme Court, in its findings of fact, noted that it did not find the wife to be completely credible, a determination to which we accord deference (see Giuliano v Giuliano, 203 AD3d 1473, 1474 [3d Dept 2022]; Headwell v Headwell, 198 AD3d 1130, 1133 [3d Dept 2021]).

Footnote 4: To the extent that the wife is arguing that she would have been able to establish more of a pattern of domestic violence if she had been permitted to enter her 502 pages of evidence, it is unclear why she did not testify to more than the one incident rather than relying on these exhibits.

Footnote 5: The wife also asserts that Supreme Court erred in not properly distributing the parties' marital debts, specifically her credit card debt and student loans, both of which were incurred during the marriage. However, at trial, the wife recognized that she has a substantial amount of debt between her credit cards and student loans and stated that she was "okay with holding on to that debt, . . . and [the husband] holding on to his debt."

Footnote 6: Although the parties were pro se at trial, both testified that they had, at some point, accrued counsel fees.